UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

– – – – – – – – – – – – – – – – – – – – – – – – – – – X
:
AFP MANAGEMENT CORP. d/b/a HILTON     :     Case No.
ALBANY,                               :
                                      :
                    Petitioner,       :     **NOTICE OF REMOVAL**
                                      :
     -against-                        :
                                      :
THE NEW YORK HOTEL & MOTEL TRADES     :
COUNCIL, AFL-CIO,                     :
                                      :
                    Respondent.       :
– – – – – – – – – – – – – – – – – – – – – – – – – – – X

Respondent, THE NEW YORK HOTEL AND MOTEL TRADES COUNCIL, AFL-CIO

(the "Union"), by its attorneys Pitta LLP, respectfully seek the removal of this civil action and

show as follows:

## I. PARTIES

1.      The Union is a labor organization within the meaning of the federal labor law,

representing over 30,000 employees in interstate commerce in the New York City region's

hospitality industry.  The Union maintains its principal office at 709 Eighth Avenue, New York,

NY 10036.

2.      The Union and the Petitioner are parties a collective bargaining agreement ("CBA")

for the period from May 1, 2013 through April 30, 2017 (attached as Exhibit A to Hotel's Petition

annexed hereto as Exhibit 1) which covers the terms and conditions of employment for Hotel

employees, including banquet captains, servers and bartenders ("Banquet Employees").

3.      Article 4 of the CBA contains the broadest arbitration clause possible, by providing:

    A. Grievances arising between the parties hereto involving questions or interpretation or
        application of any clause of this Agreement, <u>or any acts, conduct or relations between
        the parties, directly or indirectly, which shall not have been adjusted by and between
        the parties</u> involved shall be referred to a permanent umpire(s) to be known as the

Impartial Chairman, and his/her decision shall be final and binding upon the parties hereto. In addition, <u>any questions regarding arbitrability, substantive, procedural, or otherwise, or regarding the Impartial Chairperson's jurisdiction or authority, shall be submitted to the Impartial Chairperson for final and binding resolution, whose decision shall be final and binding on the parties hereto and the parties waive any right to challenge such determination by the Impartial Chairperson regarding arbitrability, jurisdiction or authority in any other forum.</u>

B.   The parties shall, <u>where appropriate, attempt to amicably resolve grievances</u> prior to submitting them to arbitration. Absent good cause, the party raising the grievance shall notify the other part of the grievance within sixty (60) days of learning of the grievance. Where appropriate, the, the parties may agree to submit to mediation before the Hotel Association of New York City, Inc. Labor Manager prior to arbitration....

D.   The parties consent that any papers, notices or process, including subpoenas, necessary or appropriate to initiate or continue an arbitration hereunder or to enforce or to enforce or confirm an award, may be served, may be served by ordinary mail directed to the last known address of the parties or their attorneys, or when authorized by the Impartial Chairperson, by telegram, fax, e-mail or telephone...[emphasis added].

## II. <u>THE ARBITRATION AND STATE COURT PETITION</u>

4.   In or about August, 2017, the Banquet Employees complained to the Union that the Hotel had not been paying them the proper gratuity for the banquet functions they worked and that they had observed copies of Banquet Event Orders (BEOs) in which the Hotel informed the guests that banquet functions were subject to an additional service charge on all food and beverage, functional space rental and audio/visual charges.  The Banquet Employees complained that the Hotel had paid them the contractual 15% gratuity only on the service charge assessed on food and beverage but not on the service charge assessed on functional space rental or audio/visual charges, in violation of the CBA.  Appendix A of the CBA expressly provides that:

> Banquet captains, servers and bartenders will receive equal distribution among such employees serving any given banquet, a total of 15.00% of the service charge for such banquet.

5.   As a result of the Banquet Employees' complaints, Union Assistant General Counsel Gideon Martin ("Martin"), by letter dated August 24, 2017, informed Hotel counsel that the Union

was investigating grievances regarding banquet events and the payment of service fees and gratuities by the Hotel and requested information relevant to the grievances.

6.      The Hotel refused to provide the information requested by Martin, notwithstanding its contractual obligation to do so under the CBA.

7.      The Union commenced an arbitration by filing and serving a demand for arbitration ("Demand") with the Office of the Impartial Chairperson ("OIC") as provided in the CBA on September 14, 2017 (Petition, Para. 7). The demand for arbitration alleged that management had failed "to pay Banquet Service gratuity on room rental, A/V, and similar charges *through April 30, 2017,* in violation of the collective bargaining agreement and the law." (emphasis added). Thus, the demand for arbitration was expressly limited to violations of the CBA in the time period prior to the expiration of the CBA.

8.      Hotel Counsel John Harras requested to stay the arbitration on the grounds that the grievance was not arbitrable via email to the OIC on September 18, 2017.

9.      Impartial Chairman Elliot Shriftman denied the Hotel's request for a stay via email on September 19, 2017.

10.     On September 29, 2017, the OIC scheduled the arbitration hearing for November 6, 2016.

11.     Upon information and belief, Petitioner commenced this proceeding in New York State Supreme Court, Nassau County, by filing the Petition on October 4, 2017. Petitioner did not notify the Union that it had filed the Petition. Hotel Counsel emailed a copy of the Petition to the undersigned attorneys for the Union on October 12, 2017.

12.     Thirty days have not yet elapsed since service of the Summons and Complaint and removal is, therefore, timely under 28 U.S.C. § 1446(b).

{00640788.DOCX / 2 }

3

13.    Pursuant to 28 U.S.C. § 1446(a), the documents attached as Exhibit "A" constitute all process, pleadings and orders received by the undersigned attorneys.

14.    Venue is proper in this District pursuant to 28 U.S.C. § 1446(a) because the Supreme Court of the State of New York, Nassau County, where this action was filed is a state court within the Eastern District of New York.

## III.  BASIS FOR REMOVAL

15.    Under 28 U.S.C. § 1441(a), "any civil action brought in a state court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or defendants, to the district court of the United States for the district and division embracing the place where such action is pending."

16.    This Court's subject matter jurisdiction, and the basis for removal of this action, is founded upon 28 U.S.C. § 1331.

17.    28 U.S.C. § 1331 states, in relevant part, that "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."

18.    28 U.S.C. § 1441(b) states, in relevant part, that "[a]ny civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or residence of the parties."

19.    Therefore, under 28 U.S.C. § 1441, actions involving state law claims which also arise or are founded on alleged violations of federal law, such as 29 U.S.C. § 185, may be removed to federal court.

20.    LMRA Section 301, 29 U.S.C. § 185, provides for suits "for violation of contracts between an employer and a labor organization representing employees in an industry affecting

commerce . . ." in a district court of the United States where the union "maintains its principal office" or is "engaged in representing or acting for employee members."  Section 301 creates a federal right of action to determine whether a party is bound to a contract with a union and to the obligation to arbitrate disputes.

21.    Petitioner's claims arise under Section 301 of the LMRA, 29 U.S.C. § 185, as petitioner seeks to enjoin an arbitration covered by the CBA's grievance and arbitration provision on the ground that the grievance is not arbitrable, an issue which is covered by the CBA's broad arbitration provision.

22.    Accordingly, this Court has original jurisdiction pursuant to 28 U.S.C. § 1331, and it has removal jurisdiction pursuant to 28 U.S.C. § 1441(b).

WHEREFORE, removal of the Petition to this Court is proper pursuant to 28 U.S.C. § 1331 and 1441(b).

Dated:  New York, New York
         October 13, 2017

                                        Respectfully submitted,

                                        PITTA LLP
                                        *Attorneys for Respondent*
                                        *New York Hotel And Motel Trades Council, AFL-CIO*


                                        By: _____/s/_____
                                                  Joseph Farelli
                                             120 Broadway, 28th Floor
                                             New York, NY  10271
                                             Telephone:  212.652.3890
                                             Facsimile:  212.652.3891
                                             (Jfarelli@pittalaw.com)

TO:    MILLMAN LABUDA LAW GROUP PLLC
       3000 Marcus Avenue, Ste. 3W8
       Lake Success, New York 11042
       Telephone:  (516) 328-8899
       *Attorneys for Petitioner*

{00640788.DOCX / 2 }

# EXHIBIT 1

FILED: NASSAU COUNTY CLERK 10/04/2017 03:26 PM

NYSCEF DOC. NO. 1

INDEX NO. 610548/2017

RECEIVED NYSCEF: 10/05/2017

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NASSAU: SPECIAL TERM
-------------------------------------------------------------------------x

In the Matter of the Application of

AFP MANAGEMENT CORP. a/b/a HILTON ALBANY,

                              Petitioner;

For a Judgment Staying the Arbitration Commenced by

THE NEW YORK HOTEL & MOTEL TRADES
COUNCIL, AFL-CIO,

                              Respondents.
-------------------------------------------------------------------------x

Index No.: 610548/2017

**PETITION**

TO THE SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NASSAU

       The Petition of AFP MANAGEMENT CORP. d/b/a HILTON ALBANY (the "Hilton Albany" or the "Hotel"), by its counsel, John M. Harras, Esq., respectfully shows this Court as follows:

       1.     I am counsel to AFP Management Corp. d/b/a Hilton Albany, a corporate entity residing in Nassau County, and am fully and personally familiar with all facts and circumstances set forth herein except for those items stated to be alleged upon information and belief. As to those items, I believe them to be true.

       2.     Petitioner seeks a stay of arbitration pursuant to C.P.L.R. § 7503(b) on the grounds that (1) there is no agreement to arbitrate the instant dispute between the Petitioner and the Respondent; and (2) if the agreement to arbitrate applies (which it does not), then Respondent has failed to comply with the agreement to arbitrate.

       3.     Petitioner is a hotel that hosts banquets, conferences, and travelers.

       4.     Respondent, the New York Hotel & Motel Trades Council, AFL-CIO (the "Union" or "HTC"), is the union for the non-managerial employees at the Hotel.

1

FILED: NASSAU COUNTY CLERK 10/04/2017 03:26 PM

NYSCEF DOC. NO. 1

INDEX NO. 610548/2017

RECEIVED NYSCEF: 10/05/2017

5.    The collective bargaining agreement ("CBA") between Petitioner and Respondent, which regulates the interaction between Hotel management and Hotel employees, expired on April 30, 2017. (See Exhibit "A").

6.    The CBA contained an agreement to arbitrate grievances "arising between [Petitioner and Respondent] involving questions or interpretation or application of any clause of this Agreement." (Exhibit A, Article 4.A)

7.    The arbitration at issue here, HTC v. Hilton Albany, Case No.: HTC #U17-483 (the "Arbitration"), was served and filed on September 14, 2017, almost three (3) months after the expiration of the CBA. (See Exhibit "B").

8.    Thus, the Arbitration was filed and served when there was no agreement to arbitrate in existence between Petitioner and Respondent. Accordingly, this arbitration should be stayed pursuant to CPLR 7503(b).

9.    In the event that the Court determines that the arbitration agreement survives the expiration of the CBA (which it should not), this arbitration should be stayed nonetheless.

10.    Article 4 of the CBA requires the arbitration to deal with a "clause in this Agreement" and requires the parties to "attempt to amicably resolve grievances prior to submitting them to arbitration." (See Exhibit A, Article 4.A, 4.B).

11.    Respondent has failed to comply with both requirements of the CBA's arbitration provision. There is no clause in the CBA that would entitle banquet servers to have compensation based on A/V, room, and/or similar charges (whatever that may entail).    Under Appendix A of the CBA, banquet servers are entitled to their wages and "a total of 15% of the service charge for such banquet." Thus, banquet servers receive fifteen-percent (15%) of the banquet cost, which consists of food and beverage sales. This method of compensation has been the practice of the Hotel for the entire duration

2

FILED: NASSAU COUNTY CLERK 10/04/2017 03:26 PM
NYSCEF DOC. NO. 1

INDEX NO. 610548/2017
RECEIVED NYSCEF: 10/05/2017

of Petitioner's ownership of the Hotel and, upon information and belief, has been the Hotel's practice for decades.

12.     Respondent also never made any attempt to resolve the grievance amicably.  To this date, Respondent has not identified a single banquet where its members were paid improperly or a single provision that justifies banquet server pay being based on A/V equipment, room rentals, or "similar charges," even though Petitioner has indicated that such facts and circumstances are necessary for a resolution.  Without those facts, Respondent's arbitration filing consists only of a bare legal conclusion from which no meaningful settlement discussion may be had---clearly a flouting of the letter and the spirit of the CBA's arbitration provisions.

13.     Accordingly, this Arbitration should be stayed pursuant to CPLR 7503(b).

Dated:     Lake Success, New York
           October 4, 2017

                                        Yours, etc.

                                        /s/ John M. Harras

                                        John M. Harras, Esq.
                                        MILMAN LABUDA LAW GROUP PLLC
                                        3000 Marcus Avenue, Ste. 3W8
                                        Lake Success, New York 11042
                                        (t) (516) 328-8899
                                        (f) (516) 328-0082
                                        john@mllaborlaw.com

3

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NASSAU:  SPECIAL TERM
-------------------------------------------------------------------------x

In the Matter of the Application of

AFP MANAGEMENT CORP. a/b/a HILTON ALBANY,       Index No.: 610548/2017

              Petitioner,

For a Judgment Staying the Arbitration Commenced by

THE NEW YORK HOTEL & MOTEL TRADES
COUNCIL, AFL-CIO,

              Respondent.
-------------------------------------------------------------------------x


## MEMORANDUM OF LAW
## IN SUPPORT OF PETITIONER'S PETITION FOR A STAY OF ARBITRATION, INJUNCTIVE RELIEF, AND A TEMPORARY RESTRAINING ORDER


        **MILMAN LABUDA LAW GROUP PLLC**
        *Attorneys for Petitioner*
        3000 Marcus Ave., Ste. 3W8
        Lake Success, New York 11042
        (516) 328-8899


*On the Brief:*
Robert F. Milman
John M. Harras

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ...................................................................................... 1

FACTS ........................................................................................................................ 2

ARGUMENT ................................................................................................................ 3

POINT I ...................................................................................................................... 3

PETITIONER'S MOTION FOR A TEMPORARY RESTRAINING ORDER SHOULD BE GRANTED ............................................................................................................ 3

POINT II ..................................................................................................................... 4

PETITIONER'S MOTION FOR A PRELIMINARY INJUNCTION SHOULD BE GRANTED ................................................................................................................... 4

    A. THE STANDARD FOR A PRELIMINARY INJUNCTION ......................................... 4

    B. PETITIONER IS LIKELY TO SUCCEED ON THE MERITS ....................................... 5

        (i)   *No Agreement to Arbitrate Exists* ..................................................... 6

        (ii) *Even If an Arbitration Agreement Exists (which it does not), Respondent Has Not Complied with its Terms.* ........................................................................ 7

    C.   PETITIONER WILL SUFFER IRREPARABLE HARM ABSENT A PRELIMINARY INJUNCTION ................................................................................................................ 9

    D.   THE BALANCE OF THE EQUITIES ARE IN PETITIONER'S FAVOR ......................... 9

CONCLUSION ............................................................................................................ 10

# TABLE OF AUTHORITIES

**Cases**

Arjent Services, LLC v. Gentile, 2008 N.Y. Misc. LEXIS 9864 at *7 (Sup. Ct. New York

    December 8, 2008)..................................................................................... 3, 4, 8

Bisca v. Bisca, 108 Misc. 2d 227, 231 (NY Sup. Ct. Nassau 1981)................................. 3

Chrysler Corp. v. Fedders Corp., 63 A.D.2d 567, 569 (1st Dep't 1978) ......................... 5

Cty. of Rockland v. Primiano Constr. Co., 51 N.Y.2d 1, 6-7 (1980)............................6, 8

Hilton-Davis Chemical Company, Div. of Sterling Drug, Inc. and Local 342, International
Chemical Workers Union, 185 N.L.R.B. 241, 242-243 (1970)...........................8, 9

Int'l Trust Co. of Bermuder Ltd. v Farnstock & Co, Inc., 1995 U.S. Dist. LEXIS 15050, 1995

    WL 606275 at *3 (S.D.N.Y. 1995)................................................... 3, 8

Litton Fin. Printing Div. v. N.L.R.B., 501 U.S. 190, 200 (1991)................................ 6

McLaughlin, Piven, Vogel. Inc., 114 A.D.2d 165, 172 (2d Dep't 1986) ........................ 5

Moczan v. Moczan, 135 A.D.2d 692, 692 (2d Dep't 1987)............................................ 5

Mt. Ararat Cemetery v Cemetery Workers and Greens Attendants Union, Local 365, 975 F.

    Supp. 445, 447 (E.D.N.Y. 1997).................................................... 4, 8

Waldron v. Goddess, 61 N.Y.2d 181, 183-84 (1984) ..................................................... 6

**Statutes**

C.P.L.R. § 7503(b)...............................................................................1

## PRELIMINARY STATEMENT

Petitioner is entitled to a stay of arbitration because Respondent is forcing Petitioner to arbitrate a dispute when no agreement to arbitrate the dispute exists. Petitioner and Respondent were parties to a collective bargaining agreement ("CBA") that contained an arbitration provision. That agreement expired ion April 30, 2017. Respondent served Petitioner with a Demand for Arbitration on September 14, 2017. At that time, there was no CBA and no agreement to arbitrate. Petitioner no longer consented to arbitration generally or to arbitrate in the Office of the Impartial Chairperson, the venue selected by Respondent in its September 14, 2017 Demand. Consequently, Petitioner cannot be forced to submit to arbitration generally, and it certainly cannot be forced to arbitrated before the Office of Impartial Chairperson.

Even if the Court finds that the arbitration agreement contained in the expired CBA should apply (which it should not), then arbitration should be stayed nonetheless because Respondent has failed to comply with the requirements of that arbitration provision. For example, Respondent did not make a good faith effort to resolve this case before filing for arbitration and did not notify Petitioner the CBA provision that justifies Respondent's claim, both of which are prerequisites for filing arbitration under the expired CBA.

Accordingly, the arbitration at issue should be stayed pursuant to C.P.L.R. § 7503(b).

## FACTS[1]

Petitioner purchased the Hilton Albany (the "Hotel") in 2015. The Hilton Albany is a union hotel and has been for the past thirty (30) years. Respondent is the union that represents all 150 of Petitioner's union employees.

When Petitioner purchased the Hotel, it voluntarily assumed and agreed to the collective bargaining agreement ("CBA") that was negotiated between the predecessor owner, TPG Contract Services, LLC, and Respondent. (See Harras Aff., Exhibit "A" – the CBA). The CBA for the Hotel expired on April 30, 2017. The parties are in negotiations for a new CBA. There has been no memorandum of agreement, or any document of the sort, agreed to by the parties that would extend the current CBA beyond its expiration date of April 30, 2017.

Since negotiations for a new CBA began, Respondent has filed five (5) grievances, the arbitration at issue here, and has established a picket line outside the Hotel composed of union employees, not Hotel employees. The union has also contacted customers of the Hotel and politicians to persuade them to boycott the Hilton Albany.

On September 14, 2017, the Hotel received a demand for arbitration along with the statutory notice saying that Petitioner had twenty (20) days to apply for a stay. (See Harras Aff., Exhibit "B"). The Demand for Arbitration says the requested arbitration is in regard to "Management's failure to pay Banquet Service gratuity on room rentals, A/V, and similar charges through April 30, 2017, in violation of the collective bargaining agreement and law." (Id.).

Petitioner filed a stay within the statutory twenty (20) day time period, on October 4, 2017, by filing a Petition for Stay of Arbitration pursuant to C.P.L.R. §§7503(b) with the New York State

---

[1] These facts are taken from the Affidavit of John M. Harras, Esq., in Support of Petitioner's Order to Show Cause. Thus, see that Affidavit and the Exhibits attached thereto for supporting documentation for factual allegations herein.

Supreme Court, Nassau County, Special Term via electronic filing. (See Dkt. No. 1). Petitioner received an index number, 610548/2017, for its stay application on October 6, 2017. (See Harras Aff., Exhibit "C"). Petitioner also received a Notice of Hearing from the Office of the Impartial Chairperson, setting November 6, 2017 as the hearing date. (See Harras Aff., Exhibit "D").

The Arbitration Agreement, however, contained in Article 4 of a CBA, expired on April 30, 2015. Because the CBA expired five (5) months before the serving of the Demand for Arbitration, there is no agreement in existence under which Petitioner has consented to submit disputes with Respondent to arbitration, let alone to the Office of the Impartial Chairperson. Accordingly, the Union cannot bind the Hotel to arbitration. Therefore, a stay of the arbitration for November 6, 2017 must be stayed.

<u>ARGUMENT</u>

**POINT I**

**PETITIONER'S MOTION FOR A TEMPORARY RESTRAINING ORDER SHOULD BE GRANTED**

"A temporary restraining order may be granted pending a hearing for a preliminary injunction where it appears that immediate and irreparable injury, loss or damage will result unless the defendant is restrained before the hearing is held." C.P.L.R. 6301. "Irreparable injury" is defined as "'that which cannot be repaired, restored or adequately compensated in money, or where the compensation cannot be safely measured.'" <u>Bisca v. Bisca</u>, 108 Misc. 2d 227, 231 (NY Sup. Ct. Nassau 1981) (citing DeFuniak, HANDBOOK OF MODERN EQUITY, 2d ed., 32).

It is well-established that if a party has not agreed to arbitrate a dispute, then that party will suffer irreparable harm if it is forced to submit to arbitration. <u>Arjent Services, LLC v. Gentile</u>, 2008 N.Y. Misc. LEXIS 9864 at *7 (Sup. Ct. New York December 8, 2008) (citing <u>Int'l Trust Co.</u>

of Bermuder Ltd. v Farnstock & Co, Inc.,1995 U.S. Dist. LEXIS 15050, 1995 WL 606275 at \*3 (S.D.N.Y. 1995)); Mt. Ararat Cemetery v Cemetery Workers and Greens Attendants Union, Local 365, 975 F. Supp. 445, 447 (E.D.N.Y. 1997) (a party "may be presumed to suffer irreparable harm if forced to arbitrate a dispute it did not intend to be subject to arbitration.")).

In this case, absent a temporary restraining order ("TRO") staying the November 6, 2017 arbitration, Petitioner will suffer irreparable harm.   If there is no stay ordered immediately, Petitioner would be forced, against its will, to forego its right to a civil trial under the United States Constitution and the New York Constitution. (U.S. CONST. amend VII, XIV; N.Y. CONST. art. I, § 2). Petitioner would also be compelled to litigate in a venue in which Petitioner does not consent to litigate. Thus, without a stay, Petitioner will be stripped of its constitutional rights and forced to litigate in an unfavorable venue to which Petitioner does not consent to submit its disputes. Therefore, the stay must be implemented immediately, otherwise Petitioner will suffer irreparable harm.   See id.

Accordingly, Petitioner is entitled to a TRO.  See Arjent Services, LLC 2008 N.Y. Misc. LEXIS 9864 at \*1, 8 (granting a TRO staying an arbitration where there was an issue over whether the allegedly applicable arbitration agreement was valid).

## POINT II

## PETITIONER'S MOTION FOR A PRELIMINARY INJUNCTION SHOULD BE GRANTED

### A. THE STANDARD FOR A PRELIMINARY INJUNCTION

"A preliminary injunction may be granted in any action where it appears that the defendant threatens or is about to do, or is doing or procuring or suffering to be done, an act in violation of the plaintiffs rights respecting the subject of the action, and tending to render the judgment

ineffectual, or in any action where the plaintiff has demanded and would be entitled to a judgment restraining the defendant from the commission or continuance of an act, which, if committed or continued during the pendency of the action, would produce injury to the plaintiff." CPLR § 6301. A court will grant a preliminary injunction when the movant demonstrates: (1) a likelihood of success on the merits; (2) irreparable injury if the preliminary injunction is not granted; and (3) a balancing of the equities in its favor. See McLaughlin, Piven, Vogel, Inc., 114 A.D.2d 165, 172 (2d Dep't 1986). Courts define "irreparable injury" as "a continuing harm resulting in substantial prejudice caused by the acts sought to be restrained if permitted to continue." Chrysler Corp. v. Fedders Corp., 63 A.D.2d 567, 569 (1st Dep't 1978). Further, a court should grant injunctive relief which reflects a balancing of the equities so as "to effect substantial justice and to preserve the status quo." Id., at 569; see also Moczan v. Moczan, 135 A.D.2d 692, 692 (2d Dep't 1987). As shown below, based on these legal criteria, the Court should grant Plaintiff's motion for a preliminary injunction.

B. PETITIONER IS LIKELY TO SUCCEED ON THE MERITS

On motions to stay arbitration there are three (3) threshold questions to be resolved by the courts: (1) whether the parties have a valid agreement to arbitration; (2) whether such an agreement, if it exists, has been complied with; and (3) whether the claim sought to be barred by limitation of time had it been asserted in a court of New York. C.P.L.R. § 7503(b); Cty. of Rockland v. Primiano Constr. Co., 51 N.Y.2d 1, 6-7 (1980). "The parties are entitled first to a judicial determination whether there was a valid agreement to arbitrate. If the court determines that the parties had not made an agreement to arbitrate, that concludes the matter and a stay of arbitration will be granted." Cty. of Rockland v. Primiano Constr. Co., 51 N.Y.2d at 7.

**(i)**     _No Agreement to Arbitrate Exists_

For there to be a valid agreement to arbitrate in place, it is "well-settled" that there must be evidence that "affirmatively establishes that the parties _expressly_ agreed to arbitrate their disputes." Waldron v. Goddess, 61 N.Y.2d 181, 183-84 (1984) (citations omitted) (emphasis added). "The agreement must be clear, explicit and unequivocal and must not depend upon implication or subtlety." Id. The requirement for clarity of intent to arbitrate is higher than that required for intent to contract. Id. at 185.

In the event that an arbitration agreement existed, but has since expired, then the arbitration agreement is invalid, and does not automatically renew, unless there is "a clearly expressed intention to renew the arbitration agreement contained in the otherwise expired [agreement]." Id. Moreover, the conduct of the parties after the expiration of the agreement cannot be considered when determining whether a valid agreement to arbitrate exists because the "threshold for clarity of agreement to arbitrate is greater than with respect to other contractual terms." Id.

In this case, the expired CBA contains no survival or renewal clause for arbitration or anything else therein.  There is nothing clearly expressed in the CBA that would extend the obligation to arbitrate beyond the April 30, 2017, the date of the CBA's expiration.  Absent that express, written survival or renewal provision in the CBA, there is no agreement to arbitrate under the above-cited, binding Court of Appeals precedent.  See Id. (granting petitioner's stay of arbitration where an arbitration agreement had expired).

Moreover, the National Labor Relations Board has held that, while, arguably, certain provisions of a CBA extend through post-CBA expiration bargaining, an arbitration provision is not one of those provisions.  Litton Fin. Printing Div. v. N.L.R.B., 501 U.S. 190, 200 (1991) ("Since Hilton-Davis, the [National Labor Relations Board ("NLRB")] has adhered to the view

that an arbitration clause does not, by operation of the [National Labor Relations Act ("NLRA")] . . . continue in effect after expiration of a collective bargaining agreement . . . We reaffirm [this rule] today."); Hilton-Davis Chemical Company, Div. of Sterling Drug, Inc. and Local 342, International Chemical Workers Union, 185 N.L.R.B. 241, 242-243 (1970) (holding that, when engaged in post-CBA-expiration negotiations, the law does not "require[] the parties to submit to arbitration any grievance which they are unable to resolve. . . [this view] is not inconsistent with our recognition of the consensual nature of the arbitral process.").

Thus, according to the United States Supreme Court and the National Labor Relations Board, arbitration provisions of a CBA generally do not survive the expiration of that CBA. Accordingly, since the Hilton Albany's CBA is expired, the Hotel no longer consents to arbitration, and there is nothing in the CBA that expressly extends the obligation to arbitrate beyond April 30, 2017, there is no valid arbitration agreement in existence that obligates the Petitioner to arbitrate Respondent's grievances before the Office of the Impartial Chairperson.     Therefore, this Court should order a stay of the Arbitration, currently scheduled for November 6, 2017.

     **(ii)**    ***Even If an Arbitration Agreement Exists (which it does not), Respondent Has Not Complied With Its Terms.***

In the event that the Court determines that the arbitration agreement survives the expiration of the CBA (which it should not), this arbitration should be stayed nonetheless.  Under C.P.L.R. § 7503, an arbitration may be stayed if the conditions precedent to the obligation to arbitrate are not satisfied.  See Cty. of Rockland v. Primiano Constr. Co., 51 N.Y.2d 1, 7 (1980).

In this case, there are at least two (2) conditions precedent to the CBA's obligation to arbitrate: (1) that the arbitration must deal with a "clause in this Agreement;" (2) that the parties "attempt to amicably resolve grievances prior to submitting them to arbitration; and (3) that the Respondent submit the

grievance within sixty (60) days of learning of the grievance." (See Harras Aff., Exhibit A, Article 4.A, 4.B).

Respondent has failed to comply with of the CBA's conditions precedent to the arbitration. The Demand for Arbitration does not identify any applicable clause of the CBA that serves as the basis of the arbitration. In fact, there is no clause in the CBA that would entitle banquet servers to have compensation based on A/V, room, and/or similar charges (whatever that may entail).

Respondent also never made any attempt to resolve the grievance amicably. They have not contacted any representative of Petitioner to discuss this service charge issue before filing arbitration. To this date, Respondent has not identified to Petitioner a single banquet where its members were paid improperly or a single provision that justifies banquet server pay being based on A/V equipment, room rentals, or "similar charges," even though Petitioner has indicated that such facts and circumstances are necessary for a resolution. Without those facts, Respondent's arbitration filing consists only of a bare legal conclusion from which no meaningful settlement discussion may be had---clearly a flouting of the letter and the spirit of the CBA's arbitration provisions.

Finally, the CBA requires that grievances be filed with sixty (60) days of their discovery. The Hotel has been paying its servers based on food and beverage sales for years. The union is aware of this and has never filed a grievance about this issue since Petitioner purchased the Hotel. Accordingly, Respondent has not fulfilled the sixty (60) day filing condition precedent contained in the CBA.

Accordingly, this Arbitration should be stayed pursuant to CPLR 7503(b).

Overall, therefore, Petitioner has demonstrated a likelihood of success on the merits.

C.    **PETITIONER WILL SUFFER IRREPARABLE HARM ABSENT A PRELIMINARY INJUNCTION**

For the same reasons as articulated in Point I of the Argument section of this Memorandum of Law, "Petitioner's Motion for a TRO Should Be Granted," Petitioner will suffer irreparable harm if a preliminary injunction is not granted.

Specifically, if a party has not agreed to arbitrate a dispute, then that party will suffer irreparable harm if it is forced to submit to arbitration. Arjent Services, LLC v. Gentile, 2008 N.Y. Misc. LEXIS 9864 at *7 (Sup. Ct. New York December 8, 2008) (citing Int'l Trust Co. of Bermuder Ltd. v Farnstock & Co, Inc.,1995 U.S. Dist. LEXIS 15050, 1995 WL 606275 at *3 (S.D.N.Y. 1995)); Mt. Ararat Cemetery v Cemetery Workers and Greens Attendants Union, Local 365, 975 F. Supp. 445, 447 (E.D.N.Y. 1997) (a party "may be presumed to suffer irreparable harm if forced to arbitrate a dispute it did not intend to be subject to arbitration.")).

Here, if Petitioner is forced to arbitrate when it does not consent to do so, then Petitioner's constitutional right to a judicial adjudication by a jury will be violated and will be forced to litigate in a venue to which it did not consent. See (U.S. CONST. amend VII, XIV; N.Y. CONST. art. I, § 2). Therefore, Petitioner would suffer irreparable harm without a preliminary injunction.

D.    **THE BALANCE OF THE EQUITIES ARE IN PETITIONER'S FAVOR**

Respondent is forcing Petitioner to forego its constitutional rights, as described above. Moreover, Respondent is using this arbitration as a vehicle to further its bargaining power in CBA negotiations, not for any legitimate grievance. The goal of this Arbitratoin is (1) to put pressure on Petitioner to accede to Respondents demands in CBA negotiations;[2] and (2) improperly utilize

---

[2] At the time of writing, Respondent, since post-CBA negotiations started, have filed five (5) grievances in addition to this arbitration, set up a picket line outside of the hotel consisting of Union employees, not union employee, and has orchestrated a boycott of the Hotel by defaming the Hotel to Hotel customers and politicians.

an arbitrator to redefine and modify terms of the CBA—a task suited for bargaining between the parties, not arbitration.  See Hilton-Davis, 185 N.L.R.B. 241, 242-243 (1970).

In contrast to Respondent's nefarious agenda, the Petitioner merely wants to safeguard its rights and avoid non-consensual arbitration.

Based on the foregoing, the balance of the equities weighs in favor of the Petitioner.

Thus, overall, Petitioner satisfies all requirements for the issuance of a preliminary injunction.

### CONCLUSION

For the foregoing reasons, Petitioner respectfully requests that the Court grant its motion for a temporary restraining order, injunctive relief, and a stay of arbitration.

Dated:  Lake Success, New York
       October 12, 2017

                               Respectfully submitted,

                               **MILMAN LABUDA LAW GROUP PLLC**

                               By:

                                 John M. Harras, Esq.
                                 Robert F. Milman, Esq.
                                 *Attorneys for Plaintiff*
                                 3000 Marcus Ave., Ste. 3W8
                                 Lake Success, New York
                                 (516) 328-8899

10

At a Term, Part _____, of the
Supreme Court of the State of New
York, held in and for the County of
Nassau, at _____ on the _____ day
of _____, 2017

Present: Hon. _____, J.S.C.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NASSAU:  SPECIAL TERM
-------------------------------------------------------------------------x

AFP MANAGEMENT CORP. d/b/a HILTON ALBANY,                    Index No.: 610548/2017

                                    Petitioner,

                                                            ORDER TO SHOW CAUSE

-against-

THE NEW YORK HOTEL & MOTEL TRADES
COUNCIL, AFL-CIO,

                                    Respondent.
-------------------------------------------------------------------------x

        Upon the annexed petition of John M. Harras, the annexed affidavit of John M. Harras,

sworn to on the twelfth (12th) day of October 2017, and the attached Memorandum of Law,

        Let the Respondent, the New York Hotel & Motel Trades Council, AFL-CIO, show cause

at a Term, Part _____, of this court to be held at the courthouse thereof, located at 100 Supreme

Court Drive, Mineola, New York 11501, on the _____ day of _____, 201__ at _____

o'clock in the _____noon of that day, or as soon thereafter as counsel can be heard, why a

judgment should not be entered for the relief demanded in the petition, and why the petitioner,

AFP Management Corp. d/b/a Hilton Albany, should not have such other and further relief as

might be just, proper, and equitable.

        Sufficient reasons appearing therefor, let personal service of a copy of this order together

with the petition and supporting documents upon which it was granted, upon the respondent on

1

or before the _____ day of _____, 20____, at _____ o'clock in the _____noon of

that day bee deemed sufficient service, and in the meantime it is

ORDERED that pending the hearing and adjudication of this application, Petitioner is

granted a temporary restraining order

(1) enjoining Respondent from pursuing any arbitrations against Petitioner based

on the collective bargaining agreement between Petitioner and Respondent

that expired on April 30, 2017; and

(2) staying the arbitration filed by Respondent against Petitioner, currently

scheduled for a hearing on November 6, 2017, labeled as HTC #U17-483,

involving Banquet Server compensation.

Dated:


SO ORDERED


_____

J.S.C.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NASSAU:  SPECIAL TERM
-------------------------------------------------------------------------x

AFP MANAGEMENT CORP. d/b/a HILTON ALBANY,           Index No.:  610548/2017

                                       Petitioner,

                                                                    AFFIDAVIT IN SUPPORT
                                                                    OF ORDER TO SHOW CAUSE
-against-

THE NEW YORK HOTEL & MOTEL TRADES
COUNCIL, AFL-CIO,

                                       Respondent.
-------------------------------------------------------------------------x
STATE OF NEW YORK )
                                  ) SS.:
COUNTY OF NASSAU )

       John M. Harras, Esq., being duly sworn, deposes and says:

       1.      I am the attorney for the petition in the above entitled proceeding and am familiar

with all the facts and circumstances heretofore had herein.

       2.      The above entitled proceeding is being brought for the purpose of obtaining a stay

of arbitration filed by Respondent when no agreement to arbitrate exists.

       3.      Petitioner purchased the Hilton Albany (the "Hotel") in 2015.  The Hilton Albany

is a union hotel and has been for the past thirty (30) years.   Respondent is the union that

represents all 150 of Petitioner's union employees.

       4.      When Petitioner purchased the Hotel, it voluntarily assumed and agreed to the

collective bargaining agreement ("CBA") that was negotiated between the predecessor owner,

TPG Contract Services, LLC, and Respondent.  (See Exhibit "A" – the CBA).

       5.      The CBA for the Hotel expired on April 30, 2017.  The parties are in negotiations

for a new CBA.

6.      There has been no memorandum of agreement or any document of the sort agreed to by the parties that would extend the current CBA beyond its expiration date of April 30, 2017.

7.      Since negotiations for a new CBA began, Respondent has filed five (5) grievances, the arbitration at issue here, and has established a picket line outside the Hotel composed of union employees, not Hotel employees. The union has also contacted customers of the Hotel and politicians to persuade them to boycott the Hilton Albany.

8.      On September 14, 2017, the Hotel received a demand for arbitration along with the statutory notice saying that Petitioner had twenty (20) days to apply for a stay. (See Exhibit "B").

9.      The Demand for Arbitration says the requested arbitration is in regard to "Management's failure to pay Banquet Service gratuity on room rentals, A/V, and similar charges through April 30, 2017, in violation of the collective bargaining agreement and law." (Id.).

10.     Petitioner filed a stay within the statutory twenty (20) day time period, on October 4, 2017, by filing a Petition for Stay of Arbitration pursuant to C.P.L.R. §§7503(b) with the New York State Supreme Court, Nassau County, Special Term via electronic filing. (See Dkt. No. 1).

11.     Petitioner received an index number, 610548/2017, for its stay application on October 6, 2017.   (See Exhibit "C").

12.     Petitioner also received a Notice of Hearing from the Office of the Impartial Chairperson, setting November 6, 2017 as the hearing date. (See Exhibit "D").

13.     The Arbitration Agreement, however, contained in Article 4 of the CBA, expired on April 30, 2017.  (See Exhibit "A").

14.     As such, there is currently no agreement in existence under which Petitioner has consented to arbitration with Respondent to arbitration, let alone at the Office of the Impartial Chairperson.

15.     Thus, an order to show cause and temporary restraining order is used here because a decision on the stay is needed before the current hearing date of November 6, 2017. No order to show cause is the only option available to Petitioner to obtain injunctive relief before that hearing date. Petitioner should not be required to submit to an arbitration that may be adjudicated as invalid.

16.     No previous application for the relief herein prayed for has been made.

17.     Pursuant to CPLR 2217, I certify that there are no frivolous contentions contained in any of Plaintiff's papers submitted.

18.     Prior to the filing of this application, in accordance with Uniform Rule 202.7(f), I made a good faith effort to notify the parties against whom the temporary restraining order is sought of this application by sending Respondent a letter via e-mail to Rich Maroko, General Counsel for Respondent, Amy Bokerman, Assistant General Counsel for Respondent, and Gideon Martin, Assistant General Counsel for Respondent, and Joseph Farelli, Outside Counsel for the Respondent, rmaroko@nyhtc.org, abokerman@nyhtc.org, gmartin@nyhtc.org, and jfarelli@pittalaw.com, respectively.  The letter was also sent to Respondent via facsimile at (212) 977-4450 and (212) 977-5714. This letter notified Respondent of the time, date, and place for when and where this application would be made, with sufficient time to permit the Respondents an opportunity to appear in response to the application.

Dated: October 12, 2017
       Lake Success, New York

John M. Harras, Esq.

3

AGREEMENT


BETWEEN


ALBANY HOTEL, INC.


AND.

ALBANY HOTEL TRS, LLC

AND

TPG CONTRACT SERVICES, LLC

AND


THE NEW YORK HOTEL AND MOTEL TRADES COUNCIL, AFL-CIO


Effective May 1, 2013 - April 30, 2017

AGREEMENT made this 7th day of July 2013, by and between the New York Hotel and Motel Trades Council, AFL-CIO ("Union") and Albany Hotel, Inc. and Albany Hotel TRS, LLC, Owner of the Hilton Albany, and TPG Contract Services, LLC, its managing agent (collectively, "Employer" or "Hotel" or "Company").

## ARTICLE 1 – RECOGNITION

A. The Company recognizes the Union as the exclusive bargaining representative for all regular full-time and regular part-time employees including House Person, Room Attendant, Laundry, Inspector, Bell Person, Bus Person, First Cook, Second Cook, Kitchen Utility, Maintenance employees, Bartenders, Hostess/Host, Banquet Servers, Banquet Bartenders, Prep Cook, Room Service Attendant, Room Service Cashier, Concierge, Commercial Cleaner, Barback, Door Person, Banquet Captain, Guest Service Agent, Night Auditors, but excluding all other employees, office clerical employees, cashiers, guards and supervisors as defined in the Act.

B. As of June 25, 2010, a regular full-time employee is an employee who has completed the 90-day probationary period and is normally scheduled to work more than thirty-two (32) hours per week. For all employees hired on or before June 24, 2010, the definition of a regular full-time employee is an employee normally scheduled to work more than twenty-eight (28) hours per week.

C. The Union recognizes the sensitive service nature of the hotel. The Union agrees to support and encourage the highest level of employee performance, safety standards, good health, proficiency and sustained effort.

## ARTICLE 2 – RIGHTS OF MANAGEMENT

All matters related to the operation, control and management of the business, including the right to direct the employees, shall be at the sole discretion of the Employer, except as otherwise provided for in this Agreement and the law. The Employer has the right to establish reasonable rules and regulations consistent with this Agreement and the law. The Union reserves the right to challenge the reasonableness and/or lawfulness of such rules.

## ARTICLE 3 – DUES, REINSTATEMENT & INITIATION FEES

A. The Employer will deduct from their wages and turn over to the duly designated officer of the Union the membership dues, initiation fees, and reinstatement fees of such members of the Union as individually and voluntarily certified in writing on and after the date of this Agreement that they authorized such deductions. Such written authorizations shall be irrevocable for a period of one (1) year or until the termination or renewal of this Agreement, whichever occurs sooner, and such written authorizations shall be automatically renewed and shall be irrevocable for successive periods of one (1) year each, or for the period of such succeeding Collective Bargaining Agreements between the

2

Employer and the Union, whichever shall be shorter, unless written notice of revocation is given to the Employer and a copy sent to the Union no more than fifteen (15) days before the expiration of each period of one (1) year, or each succeeding Collective Bargaining Agreement between Employer and Union, whichever occurs sooner.

B. The Employer, after receipt of written authorization from each employee, who has completed 90 days of employment, shall deduct the initiation fees and dues from each Union member's pay check due to him or her on the first pay of each month and shall transmit them in alphabetical order no later than the 15th day of the month to the Secretary-Treasurer of the Union. Any member who does not receive a pay check on the first pay day of the month or who has other deductions from said pay check which have priority by law (i.e., income tax withheld) and does not have sufficient pay remaining to have the initiation fees and/or dues checked off, in full or in part, shall have his or her dues and/or initiation fees, or any portion thereof not previously deducted, deducted from the pay check of the next pay day or succeeding pay days of the month until deducted in full. Said amount so deducted will be transmitted to the Union by the 30th day of the month. If sufficient dues and/or initiation fees are not deducted for the current month, a double deduction made in the same manner as previously described will be made the following month or months in order to bring the member up to date. Dues not already deducted for the current month must be deducted from the last paycheck of a Union member when he or she leaves the employ of the Employer for any reason. The Employer agrees to notify the Union weekly when the employees are discharged, granted leaves of absence, absence due "to illness or injury, or leave the employ of the Employer for any reason whatsoever.

C. The Employer shall furnish the Union with a quarterly list of all employees in the bargaining unit, including each employee's name, social security number, department location, job title, home address, phone number, status (full-time or part-time), date of hire, date of birth and ethnicity. This report shall be in the excel format.

D. The provisions of this Section are intended solely as an accommodation to the Union. It is expressly agreed and clearly understood by the parties that no agency, bailment or any other relationship is created, intended or shall be implied between the Company and the Union or between the Company and any employee or group of employees. Further, the Union specifically agrees to hold the Company harmless from any and all losses, damages, or injury of every nature whatever, including but not limited to the expenditure of all attorney's fees and all court costs incurred by the Company by reason of the provision of this Section.

## ARTICLE 4 – GRIEVANCE AND ARBITRATION PROCEDURE

A. Grievances arising between the parties hereto involving questions or interpretation or application of any clause of this Agreement, or any acts, conduct or relations between the parties, directly or indirectly, which shall not have been adjusted by and between the parties involved shall be referred to a permanent umpire(s) to be known as the Impartial Chairperson or Arbitrator, and his/her decision shall be final and binding

3

upon the parties hereto. In addition, any questions regarding arbitrability, substantive, procedural, or otherwise, or regarding the Impartial Chairperson's jurisdiction or authority shall be submitted exclusively to the Impartial Chairperson for final and binding resolution, whose decision shall be final and binding on the parties hereto and the parties waive any right to challenge such determination by the Impartial Chairperson regarding arbitrability, jurisdiction or authority in any other forum.

B. The parties shall, where appropriate, attempt to amicably resolve grievances prior to submitting them to arbitration. Absent good cause, the party raising the grievance shall notify the other party of the grievance within sixty (60) days of learning of the grievance. Where appropriate, the parties may agree to submit to mediation before the Hotel Association of New York City, Inc. Labor Manager prior to arbitration.

C. In the event of a willful default by either party in appearing before the Impartial Chairperson, after due written notice shall have been given to the said party, the Impartial Chairperson is hereby authorized to render a decision upon the testimony of the party appearing.

D. The parties consent that any papers, notices or process, including subpoenas, necessary or appropriate to initiate or continue an arbitration hereunder or to enforce or confirm an award, may be served by ordinary mail directed to the last known address of the parties or their attorneys, or when authorized by the Impartial Chairperson, by telegram, fax, e-mail or telephone.

E. The parties consent that all arbitration hearings shall be heard at the Hotel, the office of the Impartial Chairperson, or at such other place as the arbitrator or parties may designate.

F. The Arbitrator shall have the authority to issue any remedy s/he deems necessary to fully and effectively remedy any complaint, grievance or violation, ensure compliance with this Agreement, and prevent future violations, including, but not limited to equitable and monetary relief, provided that s/he shall be limited to awarding back pay to an affected employee to the period commencing three (3) years from the date the grievance or complaint was first raised with the Employer by the Union or an employee, unless a longer period is provided for by applicable law.

G. Precedent under the Industry Wide Agreement between the Hotel Association of New York City, Inc. and the New York Hotel and Motel Trades Council, AFL-CIO shall not be binding in any proceeding under this Agreement.

H. The Impartial Chairperson may call such arbitration hearing on giving five (5) days' notice to all of the interested parties. The Impartial Chairperson, however, may call a hearing on shorter notice if s/he deems it appropriate.

I. The compensation of the Impartial Chairperson and his/her proper and necessary expenses shall be shared and paid equally by the Employer and the Union.

4

J. The Impartial Chairperson shall be the panel established in the Industry Wide Agreement between the Union and Hotel Association of New York City, Inc.

K. The decision rendered by the Impartial Chairperson shall have the effect of a judgment entered upon an award made, entitling the entry of a judgment in a court of competent jurisdiction against the defaulting party who fails to carry out or abide by such decision.

L. Right to Information.

    i.   Right to information. The Employer acknowledges that the Union has a right to information relevant to its relationship with the Employer and its role as representative of the employees. The Union shall be entitled to any information relevant or necessary to enforcing this Agreement; investigating or prosecuting possible violations, grievances and complaints; and fulfilling its role as bargaining representative. The Union shall further be entitled to any information relevant to representing workers in disputes with the Employer and fulfill its obligations as exclusive bargaining representative. Nothing in this Article shall limit or reduce the Union's right to information pursuant to the National Labor Relations Act.

    ii.   Prompt Provision of Information. The Employer shall promptly and completely respond to all requests for information by the Union. If the Employer objects to any request or part thereof, it shall so state in writing with a detailed description of the nature of the objection (e.g., privilege available under law). Raising an objection with regard to one or more portions of a request shall not relieve the Employer of complying with the remainder thereof.

    iii.   The Employer shall electronically transmit to the Union any information to which the Union is entitled in a mutually agreed upon electronically searchable and importable form and format, except where such information cannot be put into electronic format.

    iv.   The Employer shall provide all relevant, non-privileged, non-objectionable and available information requested by the Union prior to a grievance meeting. If the Employer fails to do so, such information shall not be introduced at arbitration or in any other forum dealing with the case.

M. Discipline and Discharge

    i.   No discipline or discharge shall be made without just cause.

    ii.   Discussions regarding job performance shall be conducted respectfully and never in the presence of hotel guests.

5

iii.   All written discipline will be issued within thirty (30) calendar days of the date on which the Employer knew or should have reasonably known of the alleged violation. However, by mutual agreement, either party may extend the time within which discipline will be issued. Written warnings must include the date and events for which the warning is issued. Failure to issue written notice to an employee of an alleged infraction as required herein will cause the warning to be null and void. Employees shall be notified at the time of receiving discipline of their right to respond in writing and shall have such response attached to the discipline in the employee's personnel file.

iv.   Employees shall be notified of their right to have a Union representative present during any discipline. Should a Union steward be unavailable, the meeting shall be rescheduled to allow participation by a Union steward.

N.  Underpayment

i.   In any circumstance of willful underpayment of an employee, the Employer shall be subject to a fifteen percent (15%) penalty payable to the employee in addition to any monies owed if it does not correct the underpayment within four (4) days of the underpayment being brought to the attention of the Hotel.

ii.   It is understood that underpayments caused by an error by the affected employee, such as failure to punch in, may be corrected promptly, but need not be corrected within the aforementioned four (4) days.

## ARTICLE 5 – UNION SECURITY

A.  The Employer shall, when feasible, notify the Union of all job openings within the bargaining unit covered by this Agreement. In general, job openings will be posted for three (3) calendar days on the Union bulletin board. The Union may refer qualified applicants for such openings, but the Employer shall not be obligated to hire the candidates referred by the Union. The Employer retains sole discretion on sourcing candidates and may hire from any and all sources. The Employer shall be the sole judge of the qualifications of its employees, but will not discriminate against applicants referred by the Union.

B.  Only members in good standing in the Union shall be retained in employment. For the purpose of this section "member in good standing" shall be defined to mean employee members in the Union who tender the dues and initiation fees uniformly required as a condition of acquiring or attaining membership in such Union. Non-members of the Union hired by the Employer must complete membership affiliation on or before the 90th day of employment, and the Union agrees to accept such non-member into membership on the same terms and conditions generally applicable to other members.

C.  Upon written notice from the Union of failure on the part of any individual employee to

6

complete or maintain membership in the Union, as above required, the Employer shall within seven (7) days of such notice, discharge such employee, provided that the Union has complied with the legal requirements.

In lieu of discharge, the Employer may agree to deduct from the wages of said employee the Union's initiation fee or reinstatement fee and dues. Said Agreement shall be upon a term approved by the Union.

D. The provisions of Article 5 are intended solely as an accommodation to the Union. Further, the Union specifically agrees to hold the Company harmless from any and all losses, damages, or injury of every nature whatever, including but not limited to the expenditure of attorneys' fees and all court costs incurred by the Company by reason of this Article.

## ARTICLE 6 – NO STRIKE & NO LOCKOUT

A. Both the Union and the Employer recognize the service nature of the hotel business and the duty of the Employer to render continued and hospitable service to the public by supplying the food, lodging and other hotel accommodations. Therefore, neither the Union nor any of the employees will call, engage in, participate in or sanction any strike, sympathy strike, slow-down, stoppage of work, picketing or boycott during the life of this Agreement. The Employer will not lockout its employees during the life of this Agreement.

B. Any employee directly or indirectly authorizing, engaging in, encouraging, sanctioning, recognizing, or assisting in a breach to Article 6, or who refuses to perform services assigned to him or her, shall be subject to discipline.

C. The "no strike or no lockouts" provision hereof shall not apply in the event either party fails to abide by an award or decision of the Arbitrator within ten (10) days after issuance.

## ARTICLE 7 – SENIORITY

A. Management will assign each employee a Primary Job Classification and only the Primary Job Classification shall be used to determine and accrue seniority. Seniority shall be determined by Primary Job Classification within the departments. Seniority shall prevail with regard to scheduling hours, days off, vacation, and holidays.

B. When the Employer determines that a layoff will be necessary, the Employer will first layoff or reduce the hours of all probationary employees in the particular job classification affected. The Employer will then review employee seniority within the affected job classification. If the Employer determines all factors (e.g., employment status, skill, experience, productivity, performance history, etc.) are equal, the last employee hired in a particular classification shall be the first employee laid off. In recalling employees to work, the last employee laid off shall be the first one recalled. The

7

Employer, in determining who shall be recalled may, in any case where the facts warrant it, also take into consideration the ability to perform the work safely, properly, and efficiently.

C. An employee affected by Section B above who has accrued seniority within another classification shall have the right to bump the least senior person in such classification provided that their seniority within such classification exceeds that of the least senior person.

D. An employee shall not acquire seniority during his or her first ninety (90) working days. At the end of that time, the seniority shall date from the beginning of employment. During the probationary period, the employee may be laid off, transferred, terminated without recourse to the grievance and arbitration provisions of this Agreement.

E. The most senior employee within a classification shall have preference for shift selection; however, such preference shall prevail only in the event of an opening on the preferred shift. There shall be no bumping for shift selection unless there is an opening within the affected classification. Employees exercising their seniority rights for shift selection shall not be eligible to exercise such rights again for a period of ninety (90) days.

F. Employees on layoff status shall retain their recall rights for a period of three (3) months from the date of layoff. At the end of the three-month period, they shall be removed from the Company's payroll.

G. Employees within a classification changing their status from full-time to part-time shall be placed on the part-time seniority listing according to their seniority within the classification.

H. The most senior person bidding on a posted job opening shall be given preference for such opening provided such person has comparable employment status, performance record, skills, experience, productivity, knowledge and ability to perform the duties associated with the posted opening. The successful bidder shall not be eligible to bid another posted job opening for a period of twelve (12) months. At the sole discretion of the Employer, an employee with less than twelve (12) months in the current position can apply for a posted position. An employee who transfers or is promoted will have a probationary period of the first ninety (90) calendar days. At any time during this 90-day probationary period, the Employer may return the employee to or the employee may elect to return to his or her former job classification.

I. A person transferring out of the bargaining unit shall retain the seniority accrued in bargaining unit classifications for a period of ninety (90) days following such transfer.

J. Seniority and employment rights shall only lapse for the following reasons:
     i.    resignation;
    ii.    discharge for just cause;

iii.   absence as a result of disability, sickness, or accident, for a period of eighteen (18) consecutive months.

K.   A separate classification seniority listing shall be maintained for all fulltime and part-time employees. The Union may request a seniority list.

L.   It shall be the responsibility of the employee to keep the Employer and Union informed of his or her correct address and telephone number at all times.

M.   Any employee who goes on an authorized leave of absence shall maintain his or her accumulated seniority but shall not accrue any further seniority until his or her return to work.

## ARTICLE 8 – WAGES

A.   The wage scale set forth in "Appendix A" shall be the minimum base hourly rates of pay for all employees covered by this Agreement. The minimum hourly wage rates set forth in Appendix A and the actual hourly rate of pay of each employee, if higher than that provided in Schedule A, shall be increased in accordance with the following:

| Effective Date | Tipped Employees | Non-Tipped Employees |
|---|---|---|
| May 1, 2013 | 4% | 4% |
| May 1, 2014 | 4% | 4% |
| May 1, 2015 | 4.5% | 4.5% |
| May 1, 2016 | 4.5% | 4.5% |

## ARTICLE 9 - UNIFORMS

The Employer shall furnish and maintain adequate uniforms for employees required to wear uniforms. Bell staff shall be provided with seasonal coats. If uniforms are not maintained by the Employer, employees shall be reimbursed in accordance with New York State law. Full time employees who are provided wash and wear uniforms will be provided five (5) complete sets. Part Time employees who are provided wash a wear uniforms will be provided with a number of sets equal to the number of days per week they regularly work.

## ARTICLE 10 – HOURS OF WORK

A.   Forty (40) hours, exclusive of meal periods, shall constitute a normal week's work but, it is understood and agreed by the parties that nothing in this Agreement shall be construed as a guarantee of minimum or maximum hours of work per day or per week, or of the number of days of work per week, or of working schedules for associates. The Employer has the right to implement, modify and/or eliminate varied work schedules. Varied work schedules can include a 10-hour work shift. Employees may request a schedule comprised of 10-hour shifts. The Employer has the discretion to approve or deny such a

9

request based on the needs of the business.

B. Each employee shall be permitted a ten (10) minute break from his or her station for every four (4) hours worked. The rest period shall be as close to the end of the four (4) hours as practical.

C. Employees shall receive a minimum of eight (8) hours for non-tipped employees and four (4) hours for tipped employees for a scheduled work day on which the employee reports for work at the regular scheduled time, unless the Company has earlier notified the employee not to report. Employees who voluntarly leave prior to working the eight (8) hours or four (4) hours will only be paid for the time actually worked.

D. Each employee shall be paid at one and one-half (1 ½) times the regular straight-time hourly rate for all hours required to be performed in excess of eight (8) hours in anyone day or forty (40) hours in any one week. Banquet employees, except for banquet housepersons, are not eligible for overtime after eight (8) hours in anyone day. Employees working scheduled shifts of more than eight (8) hours in one day are not eligible for overtime after eight (8) hours in anyone day. Holidays, vacations, sick, jury duty, funeral, and other types of paid time off are not considered hours worked when calculating overtime pay. There shall be no pyramiding of overtime or duplication of overtime and/or premium pay.

E. Any employee required to report to work on a day when the employee is not scheduled to work shall receive a minimum of eight (8) hours of pay for non-tipped employees and four (4) hours of pay for tipped employees. Employees who voluntarily leave prior to working the eight (8) hours or four (4) hours will only be paid for the time actually worked.

F. When in uniform and ready to work, the employee must use the time clock before starting work and again when ending work. Employee s must also clock out for meal periods and clock back in when returning to work. Each employee is personally responsible for clocking in and out. Each employee is responsible for signing for hours and paychecks. Failure to comply may result in disciplinary actions.

G. Higher Paid Classification: If an employee performs the work of a higher compensated classification for less than four (4) hours, he or she shall be compensated at the higher rate for each hour or portion thereof performing the work of the higher classification. If an employee performs or is assigned to perform the work of a higher compensated classification for four (4) hours or more, he or she shall be compensated at the higher rate for the entire shift.

## ARTICLE 11 – MEALS

The Employer shall furnish one (1) meal to employees scheduled to work a shift of six (6) or more hours.

10

## ARTICLE 12 – VACATIONS

A. Each regular full-time employee who has been employed by the Employer for twelve (12) consecutive months shall be entitled to five (5) days vacation with pay on the anniversary date of employment.

B. Each regular full-time employee who has been employed by the Employer for two (2) consecutive years shall be entitled to ten (10) days vacation with pay on the anniversary date of employment.

C. Each regular full-time employee who has been employed by the Employer for seven (7) consecutive years shall be entitled to fifteen (15) days vacation with pay on the anniversary date of employment.

D. Each regular full-time employee who has been employed by the Employer for seventeen (17) consecutive years shall be entitled to twenty (20) days vacation with pay on the anniversary date of employment.

E. Each regular full-time employee who has been employed by the Employer for more than twenty (20) consecutive years shall be entitled to twenty five (25) days of vacation with pay per annum following the anniversary date of employment.

F. The vacation pay for all vacations in increments of one (1) week or more will be paid in advance if the employee so requests at least seven (7) working days before a planned vacation.

G. All regular full-time employees shall be eligible for vacation pay. Vacation pay for both tipped and non-tipped employees shall be minimum wage or the employee's regular rate of pay, whichever is greater. Vacation pay shall be computed based on the average hours paid for the previous twelve (12) months or period worked.

H. The Company will, consistent with operational requirements, attempt to meet an employee's choice of vacation time based on seniority.

I. Regular part-time employees on June 24, 2010, will be grandfathered to receive pro-rated vacation pay. No other part-time employees are eligible for vacation.

## ARTICLE 13 – SICK PAY

A. Each regular full time employee with at least one (1) year, but less than five (5) years of service with the Company, shall be granted three (3) paid PTO days per year.

B. Each regular full time employee with at least five (5) years, but less than ten (10) years of service within the Company shall be granted five (5) paid PTO days per year.

11

C.  Each regular full time employee with at least ten (10) or more years of service within the Company shall be granted six (6) paid PTO days per year.

D.  PTO days may be used for illness, injury or personal reasons.  PTO days may be used for personal reasons unrelated to illness or injury, provided such PTO days shall be scheduled with prior notice to and with the consent of the Employer, which consent shall not be unreasonably withheld or delayed.

E.  Employees, including those hired before June 25, 2010, who receive more paid sick time off than provided for herein shall retain the additional paid days and may use them for any of the reasons set forth in Section D.

F.  Sick days shall not be accrued from year to year.

G.  Sick pay for both tipped and non-tipped employees shall be minimum wage or the employee's regular rate of pay, whichever is greater. Sick pay shall be computed based on the average hours paid for the previous twelve (12) months or period worked.

H.  Regular part-time employees on the Company's payroll on April 24, 2004, and eligible for sick pay will be grandfathered for the sick pay benefit. Sick pay for both tipped and non-tipped employees shall be minimum wage or the employee's regular rate of pay, whichever is greater. Sick pay shall be computed based on the average hours paid for the previous twelve (12) months or period worked.

## ARTICLE 14 – NO DISCRIMINATION

A.  Neither the Employer or the Union will discriminate against any employee because of race, color, national origin, age, veteran status, known disability, gender, sexual orientation, religion or any other characteristic protected by law. Management and employees are committed to treating each other with dignity and respect.

B.  The parties recognize that recent immigrant workers are employed by the Employer and they are vital to the success of our operations. Since English is recognized as the language in the work place, the Employer and the Union are committed to encouraging employees who do not communicate in English as their primary language to improve that skill.

## ARTICLE 15 – ADMINISTRATION

A.  In order to investigate wages, hours, working conditions, and grievances. authorized representatives of the Union will be admitted to the Employer's premises.  During such visits, the Union will not enter guest rooms.  The Union will not interfere with the normal operations of the Employer.

12

B. The Company will provide the Union with a bulletin board space on which official Union notices may be posted.

C. The Union shall provide the Employer with written notification of the names of all designated shop stewards and the Employer shall recognize such shop stewards.

D. Stewards shall have top seniority in their job classifications for purposes of layoff.

## ARTICLE 16 – HOLIDAYS

A. New Year's Day, Memorial Day, Labor Day, Thanksgiving Day, Christmas Day, Employee's Birthday, Martin Luther King Jr.'s birthday, and July 4th shall constitute paid holidays. Employees hired on or after July 18, 2007, will not be eligible for the Employee's Birthday holiday.

B. All regular full-time employees shall be eligible for Holiday Pay after they have completed 90 days of employment. For employees hired after ratification of this Agreement, the eligibility period shall be 120 days of employment. Holiday pay shall be computed based on the average hours paid for the previous twelve (12) months or period worked.

Non-Eligible Employees: All non-tipped employees who are not eligible for Holiday Pay shall receive double (2) time for all hours actually worked on the holiday. All tipped employees who are not eligible for Holiday pay shall receive triple (3) time for all hours actually worked on the holiday.

Eligible Employees: Payment for Holiday Pay for eligible non-tipped employees shall be made at the employee's normal rate of pay. Payment for eligible tipped employees for Holiday Pay shall be made at the tipped employee benefit day rate (i.e., the greater of (i) two (2) times the employee's hourly rate; or (ii) the applicable statutory non-tipped minimum wage).

## ARTICLE 17 – INSURANCE CONTRIBUTIONS

A. For every full-time employee with more than six (6) months of service who enrolls in the Union's health and welfare plan, the Company agrees to pay 100% of employee only medical and dental coverage. Employee contributions for health and dental coverage beyond individual coverage, shall be limited to the following monthly contributions:

Medical:

| | |
|---|---|
| Employee + Spouse or Child(ren) | 25% |
| Family | 40% |

Dental:

| | |
|---|---|
| Employee + Spouse or Child(ren) | 25% |

13

|        |        |
|--------|--------|
| Family | 40%    |

## ARTICLE 18 – PENSION CONTRIBUTIONS

A. The Company agrees to contribute to the UNITE HERE National Retirement the amounts set forth below for each hour worked for each eligible employee defined in Section B below. The Company agrees to adopt at 6.4% the UNITE HERE National Retirement Fund's Preferred Schedule signed by the parties on May 19, 2010. Additionally, the Company agrees to adopt at 4.5% the PENSION MERGER AGREEMENT signed on December 14, 2009.

| Date      | Amount |
|-----------|--------|
| 6/1/2010  | $0.56  |
| 5/1/2011  | $0.59  |
| 6/1/2011  | $0.62  |
| 5/1/2012  | $0.65  |
| 6/1/2012  | $0.69  |
| 5/1/2013  | $0.72  |
| 6/1/2013  | $0.77  |
| 5/1/2014  | $0.81  |
| 6/1/2014  | $0.86  |
| 5/1/2015  | $0.90  |
| 6/1/2015  | $0.96  |
| 5/1/2016  | $1.00  |
| 6/1/2016  | $1.07  |
| 5/1/2017  | $1.11  |
| 6/1/2017  | $1.18  |

B. Pension contributions shall be made on behalf of all regular full-time employees having completed four (4) months of employment with the Company. No pension contributions shall be made on behalf of any other employee.

## ARTICLE 19 – LEAVE OF ABSENCE

A. A leave of absence is defined as an absence for a definite and specified period of time without pay, which is approved by the Company in writing.

B. All requests for leave of absence must be submitted in writing by the employee to the hotel Human Resources Department. Written approval from the Company must be received by the employee before the leave begins.

C. Employees may request an FMLA leave in accordance with the eligibility requirements of the Family and Medical Leave Act.

D. Employees with more than six (6) months of employment may request a personal leave of absence not to exceed thirty (30) calendar days. The Company has sole discretion to grant

14

or deny this leave request. Upon returning to work from a personal leave, the employee will be returned to his or her job classification in accordance with seniority.

E.  Employees on leave shall not be entitled to earn or accrue any holiday, vacation and sick pay during such leave. Upon returning from a leave of absence, the employee's length of service shall be continuous.

F.  Employees on a granted leave of absence shall notify the hotel Human Resources Department one (1) week prior to the expiration of the leave of their intention to return to work. Failure to work at the end of an approved leave of absence is considered and treated as a voluntary resignation.

G.  Employees returning from military service will be reinstated in accordance with the law in effect at the time of their return to work after military discharge providing they return during the time limits prescribed by law.

H.  Employees returning to work from a leave of absence due to sickness, accident, or pregnancy may be required by the Employer to pass a physical examination before returning to work. Such physical examination shall be at the expense of the Employer.

I.  Any employee who goes into training or accepts employment, other than being directly employed and paid by the Union, during any leave of absence shall be considered to have voluntarily resigned without recourse to the grievance and arbitration provisions of this Agreement. Employees being directly employed and paid by the Union shall not wear the Employer's uniforms and the Union shall not assign them to work on or at the Employer's premises.

## ARTICLE 20 – FUNERAL LEAVE

Upon the death of an employee's immediate family, the employee shall be entitled to up to five (5) days off with pay to attend the funeral. Such pay shall be made only for scheduled workdays and shall be on the basis of eight (8) hours per day or the number of hours the employee is regularly scheduled to work at straight time. Funeral pay shall not be paid for any day in which the employee is paid by the Company in any other manner. The employee shall be required to provide proof, satisfactory to the Company, of the relationship, death, and attendance at the funeral. Immediate family is defined as the employee's spouse; domestic partner; biological, step or adoptive children, biological, step, or adoptive parent, brother, sister, or grandparent.

## ARTICLE 21 – MISCELLANEOUS PROVISIONS & PREMIUMS

A.  Room Service - When no cashier is assigned, room service person to be compensated at $1.04 per hour in addition to his or her normal hourly rate of pay.

B.  Written warnings shall be removed from the employee's file after a period of one (1) year provided no additional warnings are issued during the one year.

15

C. Employees who are provided with a two-way radio shall be responsible to maintain the radio in good working order and to return the radio at the end of each shift.

D. The Employer shall provide notice of schedule no less than five (5) calendar days prior to the commencement of the workweek, and may not be changed unless such change is agreeable to employee in its sole discretion. The employer shall not make changes in the schedules that are abusive to the rights of employees or are designed to deprive employees of the benefits of this Agreement.

E. Maintenance to receive $26.00 per power hook-up, if the Company collects it.

F. Any housekeeping employee who cleans over fifteen (15) rooms in an eight (8) hour shift shall receive four dollars ($4.00) for each additional room cleaned within this eight (8) hour shift. Extra room pay shall be increased twenty-five cents ($0.25) each May 1, as follows:

|         |        |
|---------|--------|
| 5/1/2014 | $4.25 |
| 5/1/2015 | $4.50 |
| 5/1/2016 | $4.75 |

G. Room quotas shall be reduced by one (1) when eleven (11) checkouts are assigned, and shall be reduced by one (1) additional room for each checkout assigned beyond eleven (11).

H. Room quotas shall be reduced by one (1) for every floor beyond two (2) floors traveled.

I. On all tours the Employer will endeavor to obtain two dollars and eight cents ($2.08) per bag in and out and when obtained it will be paid to the bell persons.

J. A banquet fee of thirty-five dollars ($35.00) that is collected will be distributed to the carver, sauté, omelet or pasta station employee.

K. For banquet events, which do not generate at least three hundred dollars ($300.00) in beverage revenue, a bartender fee of seventy-eight dollars ($78.00) shall be charged to the customer and paid to the bartender who works such event.

L. A night difference of fifteen cents ($0.15) per hour shall be paid for all hours worked on a shift, which commences at 11:00 p.m., or after, and before 5:00 a.m.

M. For banquet functions scheduled and worked in the restaurant, staffing shall be by restaurant and banquet staff, if both are available.

N. Restaurant food servers will receive an additional one dollar and four cents ($1.04) per hour for those hours actually worked when they are scheduled to work without a bus person.

16

O. Banquet Servers/Bar Staff will be paid gratuities on the retail price of A & P meals sponsored by the hotel.

## ARTICLE 22 – ENGINEERING DEPARTMENT

A. All maintenance mechanics will receive pay of $1.00 below contract rate until the qualification card is completed. The duties of each classification include, but are not limited to, responding promptly to guest, management and employee requests, maintaining log books, making repairs to guest rooms, maintaining building support systems, completing tour sheets , supporting projects and functions in connection with hotel operations and all required preventative maintenance/repair documentation.

   i. **Class C Mechanic:** Class C Mechanics are primarily responsible for work in guest rooms, public, and non-public areas such as grounds keeping, snow removal, painting. wallpaper repair, sheet rock repair, tile repair, light bulb changing , filter cleaning, and activating voice/data /electrical connections. In addition, performs general labor type work such as lubrication of equipment and assisting employees in other classifications.

   ii. **Class B Mechanic:** Demonstrated ability in all of the Class C skills, plus single-phase electrical work, plumbing repair, HVAC coil cleaning, filter changing, and basic HVAC preventative maintenance. Possess mechanical ability to service and repair hard key and electronic locks, replace lighting ballast, and able to understand and operate an electrical meter.

   iii. **Class A Mechanic:** Demonstrated ability in all of the Class B and C skills plus capable of troubleshooting and repairing electrical and mechanical equipment. Familiar with the operation and repair of pneumatic controls, steam boiler operation and chillers. Five (5) plus years and/or significant proven maintenance experience.

B. It is agreed and understood that employees in a higher classification can and will be assigned to work in a lower classification. It is also agreed and understood employees in a lower c lassification can and will be assigned work of a higher classification as part of training for progression.

## ARTICLE 23 – POLITICAL ACTION COMMITTEE DEDUCTIONS (PAC)

The Company shall deduct and transmit to the controller of the New York Hotel and Motel Trades Council, AFL-CIO the amount of contribution specified for each week worked from the wages of those employees who voluntarily authorize such contributions at least 14 days prior to the next scheduled pay period, on the forms provided for that purpose by the New York Hotel and Motel Trades Council, AFL-CIO. These transmittals shall occur no later than the thirtieth (30th) day of the following month, cannot be combined with any dues deductions and shall be

17

accompanied by a list of the names of those employees for whom deductions have been made and the amount deducted for each employee.

## ARTICLE 24 – SUCCESSOR CLAUSE

A.  This Agreement shall be binding upon the successors and assigns of the parties hereto with respect to any ownership, management, or operational control of the hotel, and no provisions, terms, or obligations herein contained shall be affected, modified, altered, or changed in any respect whatsoever by the consolidation, merger, sale, transfer, or assignment of either party hereto or affected, modified, altered or changed in any respect whatsoever by change of any kind in the legal status, ownership, operation, or management of either party hereto. Any successor owner, operator and manager shall assume all of the obligations under this Agreement of the prior owner, operator and manager of the hotel or concession to the employees, the Union or any of the employee benefit funds to which Employers are required to contribute hereunder.

B.  Each owner, operator and manager, as applicable, shall make it a written material condition of any transaction of any kind whatsoever which transfers majority ownership, management, or operational control of the Hotel or Concessionaire such that any party ("transferee") assuming such majority ownership, management or operational control of the hotel must assume and be bound in writing to this Agreement.

C.  A successor, assign or transferee shall assume all obligations of the predecessor, assignor or transferor, including those agreements and practices supplementing this Agreement. Every successor, assign and transferee shall execute an assumption agreement substantially similar to the following, with respect to the hotel, not less than ten (10) days prior to any transfer or change covered by this Article to be effective on the closing of such transaction.

Agreement made as of this ___ day of _____ 20__, by and between [OWNER/PURCHASER NAME] and [MANAGER/OPERATOR NAME, IF DIFFERENT] its managing agent, on their own behalf and on behalf of any affiliated or related entity and any current or future owner, manager or operator of the Hilton Albany Hotel f/k/a the Albany Hotel, and their respective successors or assigns (collectively, "Successor"); and the New York Hotel and Motel Trades Council, AFL-CIO ("Union").

Whereas, Successor has agreed to [PURCHASE/MANAGE/OPERATE] the Hilton Albany f/k/a the Albany Hotel ("Hotel") from the current [OWNER/MANAGER/OPERATOR ("Predecessor");

Whereas, the Predecessor is bound to a collective bargaining agreement with respect to the Hotel ("CBA");

18

Whereas, Article 24 of the CBA requires any entity, which acquires a management, operation or ownership interest at the Hotel be bound to the CBA with respect to such management, operation or ownership interest at the Hotel;

Whereas, the Successor agrees that it is a successor to the obligations under the CBA;

Now, therefore it is agreed:

1.      Successor agrees that, with respect to the Hotel, it shall retain all current bargaining unit employees, whose employment will continue uninterrupted and without loss of seniority, compensation, benefits or fringe benefits, no adverse effect on other terms and conditions of employment, subject to the CBA and applicable law.

2.      Successor agrees that, effective as of the date of the closing, it has assumed, adopted and is bound by all of the terms, both economic and non-economic, of the CBA.

3.      Effective immediately any and all disputes between the parties or regarding the interpretation or application of this Agreement shall be subject to the grievance and arbitration provisions of the CBA, the entirety of which is incorporated herein by reference.

FOR THE UNION                              FOR THE SUCCESSOR (on behalf of each owner,
                                           operator and manager)

By: _____              By: _____
Name:                                      Name:
Title:                                     Title:
Authorized to Sign                         Authorized to Sign
Dated:                                     Dated:

D.  Not less than fifteen (15) business days prior to the closing of the transaction, the Employer shall give the Union notice in writing of the transaction and the notice to the Union will provide the full and complete identity of the transferee, together with a duly executed copy of the pertinent portion of the transaction agreement pursuant to which the transferee agrees to assume this Agreement. The Union represents and warrants that until the transaction closes, it shall not contact such Successor.

E.  Said notice will be held by the Union in strict confidence and the Union, upon request of the Employer, will agree to a confidentiality pledge upon terms mutually acceptable to the Employer and the Union, provided, however, that such confidentiality pledge will be ineffective upon the Employer's violation of this Article.

## ARTICLE 25 – HEALTH AND SAFETY

A.  General.  The Employer and Union agree that the safety and health of employees is of paramount concern.  Accordingly, the Employer agrees to provide a safe and healthy work environment. The Employer further agrees to provide such training and equipment,

19

adopt procedures and safeguards, and make repairs or modifications to its facility as required by law or this Article in order to provide a safe and healthy work environment.

B.  Right to Refuse Unsafe Assignment. An employee may refuse a work assignment if s/he has a reasonable good faith belief that such assignment subjects him/her to unusually dangerous conditions which are not normally part of the job. Prior to exercising his/her rights under this Article, the employee shall promptly notify management of the perceived unsafe condition. The Employer may not discriminate or retaliate against an employee for exercising his/her right hereunder.

## ARTICLE 26 – SUPPLIES

The Employer shall provide employees with supplies and equipment needed for the timely, safe, efficient and effective performance of their duties. No employee may be disciplined or discharged as a result of the Employer's failure to fulfill this obligation.

## ARTICLE 27 – NO UNLAWFUL ASSIGNMENTS

The Hotel may not request that bargaining unit employees perform or fail to perform any task or duty that would constitute a violation of any applicable law, statute or regulation.

## ARTICLE 28 – LEAVE EARLY

At any time within two (2) hours of the end of his/her shift, a Room Attendant may leave work early upon the completion of his/her quota, provided they first correct any deficiencies identified by inspectors, and receive full pay. Room Attendants shall notify housekeeping management prior to leaving. If a Room Attendant cannot complete his/her quota because of DND's in his/her section, s/he may clean other rooms then available to be cleaned, as assigned by the Supervisor. Room Attendants shall promptly notify the Hotel of DND's in his/her section.

## ARTICLE 29 – ROOM INSPECTORS

A.  Reduced Duties

   i.  The current practice of Room Inspectors completing a checklist shall be eliminated. Inspectors shall be responsible only for making a record of conspicuous defects that require repair by maintenance (e.g., broken mirrors, permanent stain, etc.) found in guest rooms during regular inspection.

   ii.  The current practice of Room Inspectors performing "due outs" shall be eliminated. However, Room Inspectors will continue to handle "due outs" when it is reported to them that a "due out" guest has not left their room after noon.

20

  iii. The current practice of Room Inspectors handing out or collecting master keys shall be eliminated.  Managers may collect and hand out such master keys.

  iv. The current practice of Room Inspectors performing duties relating to lost guest items shall be eliminated.

  v. The Hotel shall provide radios allowing all Housepersons and Room Inspectors to communicate.

  vi. All other Room Inspector Duties, including assigning of Room Attendant boards, shall remain unchanged.

B. Additional Staff

  i. Additional Full Time Room Inspector.  The Hotel agrees to hire one (1) full time Room Inspector.  This position shall first be offered to the current part time Room Inspector, Keisha Dennis.

  ii. Continue Part Time Room Inspector Practice.  The Hotel shall also continue to have a part time room inspector in accordance with existing practice.  Should Keisha Dennis accept the full time position, the Room Inspector's position shall be offered to existing Bargaining Unit employees, in accordance with seniority.

  iii. There shall be no reduction in the total number of Room Inspectors employed at the Hotel (i.e., three (3) full time and one (1) part time) nor may Room Inspectors be placed on layoff or reduced work week.

C. Quota

Upon compliance with the reduction in duties and additional staff provisions stated above, the room quota for full time Room Inspectors employed as of the effective date of this Agreement shall be forty-five (45) standard rooms (i.e., non-VIP rooms) per shift.  The room quota for full time Room Inspectors hired after the effective date of this Agreement shall be sixty (60) standard rooms (i.e., non-VIP rooms) per shift.  The quota for part time room inspectors shall be the same as the Room Inspectors for whom they are substituting. It is agreed that Room Inspectors shall also inspect public areas of the Hotel, in accordance with current practice.  The parties shall establish a program for checking clean and vacant rooms, which shall count towards the room quota.

D. Scheduling

  i. The work schedules, for current Room Inspectors shall not be changed, although preferred schedules or additional days off shall be offered to them by seniority.

  ii. Room Inspectors shall continue to be offered guaranteed overtime in the same manner and amount as heretofore.

21

## ARTICLE 30 – BANQUET STAFFING

Banquet staffing shall be as set forth below. An additional server will be added only when the staffing ratio is exceeded by 50% (e.g., if the ratio is 1 to 20, the Hotel shall not add an additional server at 25 guests, but will add an additional server at 31 guests).

| Type of Event | Staffing Ratio (server to guest) |
|---|---|
| Breakfast Buffet | 1 to 40 |
| Breakfast Sit Down | 1 to 25 |
| Lunch Buffet | 1 to 35 |
| Lunch Sit Down | 1 to 25 |
| Dinner Buffet | 1 to 35 |
| Dinner Sit Down | 1 to 25 |
| Continental Coffee Break | 1 to 150 |
| Reception | 1 to 75 |
| Reception with Butler Passed Hors d'ourves | 1 to 50 |
| Box Lunch | 1 to 75 |

## ARTICLE 31 – BARGAINING UNIT WORK

Work that is the normal assignment of bargaining unit members shall be performed by bargaining unit members only, except managers may perform bargaining unit work in accordance with past practice, provided (i) no bargaining unit employee is on layoff, reduced work week, or otherwise adversely affected, unless the work was offered to such employees in accordance with this Agreement, and by reasonable means of communication, and (ii) such work is not sufficient to justify the addition of another full or regular part time bargaining unit member.

## ARTICLE 32 – SUBCONTRACTING

The Employer shall not subcontract bargaining unit work except in the same manner or amount as heretofore, without prior agreement of the Union. Under no circumstances may the Employer subcontract bargaining unit work if any employee in the affected classification is on layoff or reduced workweek. Nor may work be subcontracted unless it is first offered to bargaining unit employees, as overtime if necessary. Furthermore, the Employer may not subcontract in a manner or amount that erodes the bargaining unit or avoids hiring additional full or regular part time bargaining unit employees.

## ARTICLE 33 – TIPPED EMPLOYEE BENEFIT DAY RATE

For all benefit days (e.g., vacation, holiday, PTO, and bereavement), tipped employees shall be paid at a rate no less than the greater of:

    A. Two (2) times the employee's hourly rate; or
    B. The applicable statutory non-tipped minimum wage.

22

## ARTICLE 34 – MAINTENANCE OF WAGES AND BENEFITS

No employee shall suffer a loss or reduction of hours, hourly or weekly wages, benefits or fringe benefits or any adverse effect on any other terms or conditions of employment on account of the execution, assignment, adoption, or assumption of this Agreement.

## ARTICLE 35 – SEVERANCE PAY

A. Severance pay shall be paid to each affected employee with not less than one (1) year of service in the event of termination resulting from: (1) the closing of the Hotel, a restaurant, operation, or department, (2) technological change or (3) the conversion of use of the employer's premises.

B. Severance pay shall be calculated as follows: (i) an amount equal to five (5) days of regular wages (or, in the case of tipped employees, ten (10) days) for each year of service; and (ii) (a) for associates participating in the health plan at the time of termination a lump sum equal to three (3) months continuing health benefits under COBRA. Unless otherwise proven, all employees laid off within six (6) months of a permanent closing, conversion or other trigger shall be presumed to have been terminated as a result of the closing, conversion or other trigger and shall be therefore eligible for severance pay.

C. In connection with the foregoing, the Employer shall, issue, and send to the Union for distribution, checks made payable to the individual employees entitled to severance pay in accordance with the foregoing formula. The Employer agrees to make all statutory tax withholdings prior to transmittal of the checks to the Union for distribution. Payment shall be computed to the nearest quarter year.

## ARTICLE 36 – TERM OF AGREEMENT

This Agreement shall become effective on the 1st day of May 2013, and shall remain in full force and effect through 11:59 p.m. on April 30, 2017.

In witness whereof the parties hereto have executed this Agreement.

NEW YORK HOTEL AND MOTEL
TRADES COUNCIL, AFL-CIO

_____
Peter Ward
President
Authorized to Sign

ALBANY HOTEL INC
AND ALBANY HOTEL TRS, LLC

_____
By:
Title:        Marc L. Lipshy
              President
Authorized to Sign

23

TPG CONTRACT SERVICES, LLC

By: Elizabeth A Procaccianti

Title: Manager

Authorized to Sign

24

## APPENDIX A - WAGES

| Job Classification | 5/1/13 | 5/1/14 | 5/1/15 | 5/1/16 |
|---|---|---|---|---|
| Housekeeping Lead Person | $13.54 | $14.08 | $14.72 | $15.38 |
| Housekeeping Inspector | $12.85 | $13.36 | $13.96 | $14.59 |
| Room Attendant- Laundry | $12.58 | $13.08 | $13.67 | $14.29 |
| Commercial Cleaner | $12.58 | $13.08 | $13.67 | $14.29 |
| House Person | $12.57 | $13.07 | $13.66 | $14.27 |
| Door Person | $12.72 | $13.23 | $13.82 | $14.45 |
| Guest Service Agent | $12.57 | $13.07 | $13.66 | $14.27 |
| Night Auditor | $12.57 | $13.07 | $13.66 | $14.27 |
| Bell Captain ($1.00 above Bell Person) | $12.05 | $12.53 | $13.09 | $13.68 |
| Bell Person | $10.90 | $11.34 | $11.85 | $12.38 |
| Concierge | $13.62 | $14.16 | $14.80 | $15.47 |
| Host/Hostess | $12.85 | $13.36 | $13.96 | $14.59 |
| Barista | $12.85 | $13.36 | $13.96 | $14.59 |
| Room Service Cashier | $12.85 | $13.36 | $13.96 | $14.59 |
| Bus Person | $11.40 | $11.86 | $12.39 | $12.95 |
| Food Server (tip position) | $5.71 | $5.94 | $6.21 | $6.49 |
| Room Service Attendant (tip position) | $5.71 | $5.94 | $6.21 | $6.49 |
| Lead Cook | $15.64 | $16.27 | $17.00 | $17.76 |
| First Cook | $13.96 | $14.52 | $15.18 | $15.86 |
| Second Cook | $13.62 | $14.16 | $14.80 | $15.47 |
| Prep Cook | $12.57 | $13.07 | $13.66 | $14.27 |
| Kitchen Utility | $11.76 | $12.23 | $12.78 | $13.35 |
| Maintenance - Class A | $18.40 | $19.13 | $19.99 | $20.89 |
| Maintenance - Class B | $15.62 | $16.24 | $16.97 | $17.74 |
| Maintenance - Class C | $13.20 | $13.72 | $14.34 | $14.99 |
| Barback | $11.55 | $12.01 | $12.55 | $13.12 |
| Bartender (tip position) | $8.16 | $8.48 | $8.86 | $9.26 |
| Cocktail Server (tip position) | $5.71 | $5.94 | $6.21 | $6.49 |
| Banquet House Person | $12.57 | $13.07 | $13.66 | $14.27 |
| Banquet Bartender (tip position) | $7.65 | $7.95 | $8.31 | $8.68 |
| Banquet Captain (tip position) | $6.87 | $7.14 | $7.46 | $7.80 |
| Banquet Servers (tip position) | $5.40 | $5.61 | $5.87 | $6.13 |

During their first six (6) months of employment, employees hired after the ratification of this Agreement will receive one dollar ($1.00) less than the rates reflected in Appendix A or minimum wage.

Banquet captains, servers and bartenders will receive equal distribution among such employees serving any given banquet, a total of 15.00% of the service charge for such banquet. Banquet house person will receive 0.5% of the total service charge.

Nothing in this Agreement shall limit the right of the Employer to pay wages in excess of those contained in this Appendix.

LETTER OF UNDERSTANDING
BETWEEN
ALBANY HOTEL, INC.
AND
ROCHESTER REGIONAL JOINT BOARD

The parties agree that only the following five (5) full-time banquet captains and banquet servers shall continue to be eligible for the insurance, as provided in Article 1B, as long as they remain available for full-time hours during the term of this Agreement. All other banquet captains and banquet servers, other than those identified below in this Letter of Understanding, will only be eligible for insurance consistent with the terms provided for in Article 18.

Everol Gordon
Rotibi Rynoe
Patrick James
Denise Lucaroni
Mark Sumida

ALBANY HOTEL, INC.

By:                                             Date:

New York Hotel and Motel Trades Council, AFL-CIO

By:                                             Date:

26



New York Hotel and Motel Trades Council, AFL-CIO • 707 Eighth Avenue, New York, NY 10036 • Telephone (212) 245-8100 • Fax (212) 977-5714 • www.hotelworkers.org

9/14/2017

HTC #U17-483

Office of the Impartial Chairperson
321 West 44th Street
Suite 400
New York, New York 10036

Dear Sir:

We herewith file a demand for arbitration against:

    Hilton Albany (formerly Hotel Albany)
    Robert Milman
    Attorney
    40 Lodge Street
    Albany, NY 12207

RE: HTC #U17-483/Hearing requested by the New York Hotel & Motel Trades Council, AFL-CIO, re: Management's failure to pay Banquet Service gratuity on room rentals, A/V, and similar charges through April 30, 2017, in violation of the collective bargaining agreement and the law.

We will appreciate a conference with management on this matter at your earliest convenience.

New York Hotel and Motel Trades Council, AFL-CIO

Peter Ward
President
PW / DB

Local 6
Nancy Hull

cc: Robert Milman, Hilton Albany (formerly Hotel Albany)
Statutory notice attached.

**John Harras**

| | |
|---|---|
| **From:** | efile@nycourts.gov |
| **Sent:** | Friday, October 6, 2017 9:12 AM |
| **To:** | John Harras |
| **Subject:** | NYSCEF Alert: Nassau - Special Proceedings - CPLR Article 75 - <ASSIGNMENT OF INDEX NUMBER> 610548/2017 (AFP Management Corp. - v. - New York Hotel & Motel Trades Council, AFL-CIO) |



# *Nassau County Supreme Court*
# *ASSIGNMENT OF INDEX NUMBER*

On 10/04/2017, at 3:26:48 PM, the case commenced by the following electronic filing:

Document number: **1**
Document type: **PETITION**
Caption: **AFP Management Corp. - v. - New York Hotel & Motel Trades Council, AFL-CIO**

was assigned the following index number:

Index Number: **610548/2017**
Date of Filing: **10/04/2017**

---

### Filing User Information
User Name: **JOHN HARRAS**
Phone Number:
Fax Number:
Email Service Address: **john@mllaborlaw.com**
Work Address:

---

### Payment Information
Amount of payment: **$210**
Date of payment: **10/04/2017**
Payment method: **AMERICAN EXPRESS**
Authorization code: **201025**
Payment Comments:

---

### E-mail Service Notifications Sent

| Name | Email Address |
|---|---|
| JOHN HARRAS | john@mllaborlaw.com |

Note: Service of initiating documents and the "Notice of Availability Regarding Electronic Filing" (in consensual cases) or the "Notice of Commencement of Mandatory E-Filed Case" (in mandatory cases) must be made in hard copy (unless the party agrees to accept service by electronic means). These forms can be found on the NYSCEF site under the "Forms" menu. The served copies also must bear the assigned Index Number and the date of filing (CPLR 305).

## Documents Filed

*(To view a document, click the document type link)*

| Doc # | Document Type | Additional Doc Info | Special Instructions | Filed Date |
|---|---|---|---|---|
| 1 | PETITION | | | 10/04/2017 |
| 2 | EXHIBIT(S) | CBA | | 10/04/2017 |
| 3 | EXHIBIT(S) | Arbitration Notice | | 10/04/2017 |

*THIS E-MAIL IS INTENDED ONLY FOR THE USE OF THE NAMED ADDRESSEE(S) AND FOR THE PURPOSES OF THE NEW YORK STATE COURTS ELECTRONIC FILING SYSTEM. IF YOU ARE NEITHER THE INTENDED RECIPIENT NOR A PERSON DESIGNATED TO RECEIVE MESSAGES ON BEHALF OF THE INTENDED RECIPIENT, PLEASE NOTIFY THE SENDER IMMEDIATELY. THANK YOU.*

# OFFICE OF THE IMPARTIAL CHAIRPERSON

321 WEST 44TH STREET, SUITE 400
NEW YORK , NY 10036

TEL: (212) 541-7212  EMAIL: OFFICE@IMPARTIALCHAIRPERSON.ORG

HOTEL ASSOCIATION OF NEW YORK CITY, INC.                    NEW YORK HOTEL & MOTEL TRADES COUNCIL

9/29/2017

Jonathan Sajan                                    Mr. Peter Ward
Director of Human Resources                       New York Hotel & Motel Trades Council
Hilton Albany (fka Hotel Albany - fka Crowne Plaza    707 Eighth Avenue
Albany)                                           New York, NY 10036
40 Lodge Street
Albany, NY 12207

**Sent Via Facsimile Or E-Mail to All Parties**

A hearing will be held at this office  (321  West 44th Street, Suite 400 New York City) on  **Monday, November 6, 2017 at 9:30 AM** in the matter of the request of the Hotel Trades Council concerning:

#U17-483/Hearing requested by the New York Hotel & Motel Trades Council, AFL-CIO RE: Management's failure to pay Banquet Service gratuity on room rentals, A/V, and similar charges through April 30, 2017, in violation of the collective bargaining agreement and the law.

In order that your interests may be protected, it is essential that you be present or represented at that time.

cc:    David Rothfeld, Esq.
       Vincent Pitta, Esq.
       Niki Franzitta, Esq., VP HANYC
       Barry Saltzman, Esq.
       Jane Lauer Barker, Esq.
       Joseph Farelli, Esq.
       Alexander Soric, Esq.
       Michael Lydakis, Esq.
       Deshawn Belton
       Susan Gempler
       Nancy Hull
       John Harras, Esq. Milman Labuda